RICHARDS et al. v. WASHBURN et al.

(Supreme Court, Appellate Division, First Department. February 5, 1897.)

ATTORNEY AND CLIENT—ATTORNEY EXAMINING TITLE—BY WHOM EMPLOYED.

It is a question for the jury whether defendants employed plaintiffs, so as to be liable for their services, where it appears that defendants applied for a mortgage loan, and the person to whom they applied referred them to plaintiffs, as his attorneys; that defendants agreed with plaintiffs to pay them for examining the title and procuring a title insurance policy; that plaintiffs examined the title and negotiated for the policy; and that defendants refused to accept the loan because the mortgagee insisted on inserting in the mortgage an unusual and burdensome provision.

Appeal from trial term, New York county.

Action by J. Tredwell Richards and another against Norman S. Washburn and others. From a judgment entered on a verdict for plaintiffs directed by the trial judge, defendants appeal. Reversed.

The plaintiffs, a firm of lawyers, allege in their complaint that the defendants, "having previously agreed with a client of these plaintiffs to borrow from him the sum of $7,000, to be secured by their bond accompanied by their mortgage, * * * employed these plaintiffs to examine the title, * * * including the procuring of searches and a policy of insurance from the Lawyers' Title Insurance Company for the purpose of such loan, and agreed to pay these plaintiffs for such services; * * * that plaintiffs, in pursuance of such employment, examined the title to said premises, procured said searches, and were ready and willing and offered to procure the policy of insurance from the Lawyers' Title Insurance Company for the purposes of such loan, but the defendants refused to accept such policy of insurance, and prevented these plaintiffs from procuring the same, and refused and still refuse to pay these plaintiffs the amount which they had agreed to pay for the services aforesaid." The defendants deny that they employed the plaintiffs, "but admit that they agreed to pay the price thereof; the plaintiffs being employed by one Harbeck, who was to make the said loan. They admit that the plaintiffs examined said title, procured said searches, and assumed to be ready and willing to procure the policy of insurance for the purposes of such loan; ·but they deny that they refused to accept said policy of insurance, or that they prevented the plaintiffs from procuring the same, and they allege that plaintiffs never did procure said policy." The value of the services was admitted. Upon the trial it appeared that the services were performed, searches had been procured, and that the title insurance company were ready to issue the policy upon the lawyers' certificate that the mortgage was recorded. Mr. Brown, one of the plaintiffs, testified as follows: "The mortgage which was to be executed had been prepared under the direction of Mr. Harbeck. I gave it to Mr. Henry J. Washburn for execution. * * * He brought it back, and said he wouldn't sign it with the receiver's clause in it. * * * I said I wouldn't strike the clause out, without Mr. Harbeck's instructions. I asked Mr. Harbeck whether he was willing to have the receiver's clause stricken out of the mortgage, and he said

that he was not." On cross-examination he said: "When Mr. Harbeck instructed me not to strike it out, I then refused to strike it out, under his instructions. * * * I have been Mr. Harbeck's counsel for a number of years, and I do searching of titles for him, when he loans money on real estate, whenever parties who are to take the loan request me to do it and agree to pay my fee for it. Mr. Harbeck sends borrowers to me, and tells them to make any arrangements that they can make as regards the payment and the charge for my services. I act as attorney and counsel for Mr. Harbeck in searching the title, and I protect his interest. He was the party represented in the transaction." He further testified that, after seeing Mr. Harbeck and Mr. Washburn about the matter, he wrote a letter to the latter, in which he said: "I will examine the title to property No. 859 Broadway, including the procuring of full official searches and a policy of insurance from the Lawyers' Title Insurance Company for the purpose of a loan for $110." After the plaintiffs rested, the defendants moved to dismiss the complaint on the grounds, among others, that the plaintiffs had not shown that the refusal to execute a mortgage with the receivership clause in it prevented the issuing of a policy of insurance, and that the defendants having offered to execute a mortgage in the usual form, on which the Lawyers' Title Insurance Company would issue a policy of insurance, did not prevent the plaintiffs from completing their contract. It was admitted that it was not essential to the issuing of a policy of insurance by the Lawyers' Title Insurance Company for a loan that a receiver's clause be in the mortgage. The motion to dismiss was denied. The defendant Washburn then testified to substantially the same facts in regard to seeing Mr. Harbeck and asking him for the loan: "He said that the title would have to be satisfactory to Mr. Brown. Mr. Brown had to search it, and, if it was satisfactory to him, he (Mr. Harbeck) would loan the money." Such of the other facts as are material appear in the opinion.

Argued before VAN BRUNT, P. J., and WILLIAMS, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

William H. Sage, for appellants.

J. Tredwell Richards, for respondents.

O'BRIEN, J. The question presented is whether or not, as matter of law, defendants were obligated to pay plaintiffs' fees. It appears that the searching of the title and the procuring of a policy from the Lawyers' Title Company were mere incidents to the main purpose of the defendants, which was the procuring of a loan from Mr. Harbeck. Under these circumstances, whether we regard the plaintiffs as acting for Mr. Harbeck or for the defendants, we are brought to the same conclusion. Mr. Harbeck agreed to loan on an undivided interest, and to take a mortgage as security. In the absence of any agreement to the contrary, this meant the usual mortgage, which would not include a receiver's clause. As the defendants had but an undivided interest in the property, and such a clause would cause complications with the other part owners in the collection of the rents and the management of the property, and, as the value of the security was not questioned, the defendants were justified in objecting to the receiver's clause. If this or any other burdensome clause was to be insisted upon by the plaintiffs, acting for Mr. Harbeck, it was their duty to disclose that fact to the defendants; and if, omitting such duty, they were not able to procure the policy of insurance or the loan for the defendants, the fault was theirs, or Mr. Harbeck's. If, on the other hand, they were acting as attorneys for the defendants, then it was clearly their duty to obey the latter's instructions; and, when requested, they should

have omitted the receiver's clause, it appearing that without it the mortgage would have been acceptable to the title company, and the policy would have been issued, and thus the plaintiffs would have been able to perform their agreement.    As the defendants, therefore, were not responsible for the failure, we do not think, as matter of law, that they were liable.    It is fairly inferable from the facts that the searching of the title and the procuring of a policy were not to be for their benefit, but were to be used, as already said, in connection with the procuring of a loan.    And the only benefit they were to derive from the services was denied them because of the unreasonable insistence upon the receivership clause by the plaintiffs and Mr. Harbeck.    The defendants asked to go to the jury upon two questions of fact:    (1) Whether or not they ever employed the plaintiffs as their attorneys; and (2) whether or not the defendants ever prevented the plaintiffs from procuring the policy of insurance.    Upon these the jury might have found that the plaintiffs were Harbeck's attorneys, that they were examining the title for his information, and that, when he unjustly refused to accept a proper mortgage, the plaintiffs were remitted to him for compensation for services which had by his act become useless to the defendants.    Without going so far, therefore, as to hold that upon the whole case the complaint should have been dismissed, we are of opinion that the defendants were entitled at least to have the questions proposed submitted to the jury, and that in any event the direction of a verdict upon the theory that the defendants, as matter of law, were liable, was erroneous.

The judgment should be reversed, and a new trial granted, with costs to the appellants to abide the event.

VAN BRUNT, P. J., and WILLIAMS and PATTERSON, JJ., concur.

INGRAHAM, J.    I concur with Mr. Justice O'BRIEN, on the ground that the plaintiff acted throughout as counsel for Mr. Harbeck, and not for the defendants, and that the agreement of the defendants to pay Mr. Harbeck's lawyers' fees for examining the title was part of the contract for the loan, and not an independent contract between the defendants and the plaintiffs, under which the defendants could be liable for the amount agreed upon as the plaintiff's fees, irrespective of the completion of the contract between the defendants and Harbeck.    Brown, one of the plaintiffs, testified:

"I have been Mr. Harbeck's counsel for a number of years, and I do the searching of titles for him when he loans money on real estate, whenever parties who are to take the loan request me to do it, and agree to pay my fee for it.    Mr. Harbeck sends the borrowers to me, and tells them to make any arrangements that they can as regards the payment and the charge for my services.    I act as attorney and counsel for Mr. Harbeck in searching the title, and I protect his interest.    Q. So that he was the party you represented in this transaction?    A. Yes; I did.    Q. And the only arrangement that was made between you and Mr. Washburn was an arrangement as to the amount that was to be allowed for searching the title?    A. And the agreement to pay my fees."

It thus appears that the plaintiffs were not employed by the defendants, did not act for them, but did act for Harbeck, as his counsel, in searching the title. The agreement between the plaintiffs and the defendants was that the defendants were to pay the plaintiffs' fees for searching the title, not as an independent employment, but while they were acting as counsel for Harbeck, and representing him. The payment of the plaintiffs' fees by the defendants was therefore a part of the contract to make the loan, and the defendants were liable only in case Harbeck performed his agreement. I think, also, that Harbeck's refusal to perform his agreement without the insertion of a receiver's clause in the mortgage, when it was not a part of the original agreement for making a loan that such receiver's clause should be inserted in the mortgage, was a breach of his agreement, and that the failure to make the loan was therefore by reason of a refusal on the part of Harbeck to perform, and not a refusal of the defendants. The loan not having been made, in consequence of a failure on the part of Harbeck to perform his agreement, the defendants were released from any obligation to perform the contract made by them, and, as part of that contract was to pay Harbeck's counsel for examining the title,— that being no independent liability that the defendants incurred therein,—were not liable.